Case 1:12-cv-04223-SAS   Document 3   Filed 06/04/12   Page 1 of 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

BARRY THOMAS, KIM STATUTO,
ANTHONY CURRY, RAQUEL DIAZ, and
GWENDOLYN PRIMUS,

    Plaintiffs,

v.

NEW YORK CITY BOARD OF ELECTIONS,
MARIA GUASTELLA, FREDERIC M.
UMAINE, JOSE MIGUEL ARAUJO, NAOMI
BARRERA, JULIE DENT, JUAN CARLOS
POLANCO, NANCY MOTTOLA-
SCHACHER, J.P. SIPP, GREGORY C.
SOUMAS, JUDITH STUPP, and STEVEN H.
RICHMAN – General Counsel,

    Defendants.

------------------------------------------------------------ X



**OPINION AND ORDER**

12 Civ. 4223 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

    Plaintiffs are five voters who seek a mandatory injunction ordering the New York City Board of Elections ("Board") to add Mark Escoffery-Bey to the ballot as a candidate for Congress in the upcoming June 26, 2012 Democratic primary election. Because, on the evidence submitted to this Court, plaintiffs cannot establish a likelihood of success on the merits, their motion is denied.

**I.     FACTS**

1

The relevant facts appear to be undisputed.[1]  On April 16, 2012, a petition was filed with the Board to designate Escoffery-Bey as a candidate for Congress.  On April 17, the Board determined that the required cover sheet that accompanied the petition was defective because it did not list the congressional district in which Escoffery-Bey was running and because there was an inconsistency between the residential zip code listed on the cover sheet and in the petition.[2]  Escoffery-Bey submitted an amended cover sheet on April 20 at 3:30 p.m., but the Board determined that this too was defective because it did not list the name of the party in whose primary Escoffery-Bey sought to run.[3]  Thirty-four minutes later, a second amended cover sheet was submitted, but this too was defective: it did not contain the signed statement "this is to certify that I am

---

[1]   The parties have submitted sparse moving and opposition papers.  Plaintiffs have filed an Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and an Attorney Affirmation and Memorandum of Law ("Pl. Mem.").  Defendants have submitted a Memorandum of Law in Opposition to Plaintiffs' Application for a Preliminary Injunction ("Def. Mem.") and a Declaration of Stephen Kitzinger in Opposition to Plaintiffs' Application for a Preliminary Injunction ("Kitzinger Decl.").

[2]   *See* 4/17/12 Board of Elections Letter to Diane Escoffery, Ex. 2 to Pl. Mem., at 2.

[3]   *See* Amended Cover Sheet, Ex. C to Kitzinger Decl.

authorized to file this amended cover sheet," as required by the Board's rules.[4]  On April 24, the Board sent Escoffery-Bey a letter informing him that his name would not appear on the ballot because the cover sheet did not comply with the Rules and the deadline to file a corrected cover sheet had passed.[5]

According to defendants, Escoffery-Bey then "repeatedly sought to commence a special proceeding pursuant to Article 16 of the New York Election Law in the Supreme Court of the State of New York,"[6] but was unsuccessful due to technical errors in his Order to Show Cause and, later, because the statute of limitations – which requires that a state court proceeding be filed within three days of the Board's determination or fourteen days of the last day to file a petition, whichever is later – had run.[7]

---

[4] *See* Second Amended Cover Sheet, Ex. D to Kitzinger Decl.  Rule C3 of the Designating Petition and Opportunity to Ballot Petition Rules for the June 26, 2012 Federal Office Primary Election (the "Rules") states that the amended cover sheet "must" contain this signed authentication.  The Rules were pre-cleared by the Attorney General of the United States, pursuant to the Voting Rights Act, on April 4, 2012.

[5] *See* 4/24/12 Board of Elections Letter to Diane Escoffery, Ex. E to Kitzinger Decl.

[6] Def. Mem. at 3.  Plaintiffs' attorney did not dispute this account – which defendants describe only "upon information and belief" – at this Court's May 30, 2012 conference.

[7] *See* N.Y. Elec. L. § 16-102.

3

## II.   LEGAL STANDARD

Plaintiffs seek to alter the status quo by qualifying Escoffery-Bey as a candidate for the election. It is therefore properly described as a mandatory injunction.[8] "[A] district court may enter a mandatory preliminary injunction against the government only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits."[9] In a case like this, where "the requested injunction (1) would provide the plaintiff with 'all the relief that is sought' and (2) could not be undone by a judgment favorable to defendants on the merits at trial," plaintiffs must meet the higher "substantial" likelihood of success on the merits standard.[10]

## III.   APPLICABLE LAW

Although plaintiffs do not clearly articulate the theory under which they are entitled to an injunction, their memorandum of law states that they "asserts

---

[8]   *See Mastrovincenzo v. The City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) ("[a] mandatory injunction . . . is said to alter the status quo by commanding some positive act"). Although "the distinction between mandatory and prohibitory injunctions is not without ambiguities or critics," the relief sought here would clearly be mandatory. *Id.* (quotation and citation omitted). Although plaintiffs also seek a Temporary Restraining Order, a directive placing Escoffery-Bey on the ballot would last for more than fourteen days, which is the maximum length of time that a TRO may last. *See* Fed. R. Civ. P. 65(b)(2).

[9]   *Mastrovincenzo*, 435 F.3d at 89.

[10]   *Id.* at 90.


(sic) jurisdiction pursuant to 42 U.S.C. sec. 1983, sec 1988, the First Amendment right to political association, the Fourteenth right to due process, the Help Americans Vote Act (HAVA at 42 U.S.C. sec. 15482(a)) and the National Voters Registration Act (NVRA at 42 U.S.C. sec. 1973gg-1))."[11]

> Section 1983 states, in relevant part, that
>
> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit;  it simply provides a mechanism for enforcing a right or benefit established elsewhere."[12]  "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to

---

[11] Pl. Mem. at 1-2.

[12] *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

victims if such deterrence fails."[13]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[14]  For this purpose, a decision of the Board qualifies as official action under color of state law.[15]

The Fourteenth Amendment to the United States Constitution provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  It is not clear to this court whether voters have either a liberty or a property interest in voting for the candidate of their choice.[16]  The First Amendment guarantees the people the right "to organize, access the ballot, and vote for the candidate of their choice."[17]

---

[13]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[14]     *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

[15]     *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 663 (1978); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458 (2006).

[16]     In *Leroy v. New York City Bd. of Elections*, 793 F. Supp. 2d 533, 537 (E.D.N.Y. 2011), Judge Vitaliano canvassed the relevant caselaw and explained that candidates have neither a property nor liberty interest in elected office but posited that they perhaps have a property interest in ballot position itself.  Plaintiffs have not explained to this Court the extent to which voters share that property interest.

[17]     *Rivera-Powell*, 470 F.3d at 468 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1993) (explaining that ballot access restrictions burden "the right of individuals to associate for the advancement of political beliefs, and the right of

## IV.    DISCUSSION

There are many potential grounds that would bar plaintiffs from obtaining relief from this Court. But because of the parties' need for a rapid resolution of this motion – and in accordance with the principle that the Court should not reach questions unnecessary for that resolution – I address only the two simplest ones here: (1) plaintiffs have not shown that the Board has deprived them of any constitutionally-protected interest and (2) even if such a deprivation did occur, plaintiffs have received due process through the putative candidate's challenge to his exclusion from the ballot.

"If a statute imposes only modest burdens" on the First Amendment right to freedom of association, then "'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions' on

---

qualified voters, regardless of their political persuasion, to cast their votes effectively")). However, in Court defendants correctly noted that plaintiffs fail to even allege that they actually signed Escoffery-Bey's nominating petitions. The affidavits submitted by plaintiffs include no such averment; the only documentary evidence they have submitted shows that they are registered Democratic voters. *See* Ex. 5 to Pl. Mem.

Plaintiffs do not explain how section 15482(a) of the HAVA, which establishes computerized statewide voter registration list requirements, or how section 1973gg-1 of the NVRA, which governs voter registration in national elections, creates a cause of action for voters whose preferred candidate is denied a line on the ballot.

election procedures."[18]  Plaintiffs recognize that "'limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable.'"[19]

Plaintiffs do not challenge the power of the Board to require that potential candidates file cover sheets along with their nominating petitions.  Nor do they challenge the requirement that a candidate include on the cover sheet the name of the candidate's political party or the requirement that an amended cover sheet include a signed declaration that the person submitting the amendment is authorized to do so.  All of these requirements are reasonable and nondiscriminatory.

It is true that, in combination, the two amended cover sheets submitted on behalf of Escoffery-Bey contained both the required party affiliation and the statement authorizing the submission of the amended cover sheet.  But the Rules do not permit candidates to cure their cover sheet defects by submitting two defective amended cover sheets that, in combination, satisfy the requirements.

---

[18] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 452 (2008) (quoting *Anderson*, 460 U.S. at 788).

[19] Pl. Mem. at 3 (quoting *Burdick v. Takushi*, 504 U.S. 428, 440 n.10 (1992)).

Because the Board's Rules were lawful (indeed, the United States Attorney General pre-cleared them as such) and because the Board accurately enforced those Rules when evaluating and denying Escoffery-Bey's nominating petition, his supporters cannot show that they were deprived of their First Amendment associational rights or any property or liberty rights protected by the Fourteenth Amendment.

Defendants urge this Court to reject plaintiffs' motion on an independent ground: that under the Second Circuit's 2006 decision in *Rivera-Powell*, "the process employed by the Board combined with the availability of a [New York Supreme Court] judicial remedy under Article 16 of the [New York] Election Law satisfies the Due Process requirements."[20] In *Rivera-Powell*, a candidate's attempt to be placed on the ballot was denied by the Board and the Second Circuit explained that "[w]here a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process," even if "he failed to avail himself of that opportunity."[21]

Voters, unlike candidates, have no standing to pursue relief under Article 16 and so plaintiffs could not have taken advantage of the state law

---

[20] Def. Mem. at 6.

[21] *Rivera-Powell*, 470 F.3d at 468 n. 9 (quotation and citation omitted).

procedures available to Escoffery-Bey.  But voters were also plaintiffs in *Rivera-Powell*, and that court explained that their claim "also fails, as they have alleged no deprivation independent of Rivera-Powell's.  Thus, because the Board's action does not rise to the level of a constitutional violation with regard to Rivera-Powell, it does not rise to such a level with regard to the voters."[22]  Because the candidate plaintiffs here support had a full and fair opportunity to litigate this issue in state court, plaintiffs have failed to allege – much less prove – that they were deprived of any constitutional right.

As explained earlier, the rejection of Escoffery-Bey's nominating petitions was done in accordance with (technical and perhaps overly stringent) state law.  The candidate properly sought relief in state court – albeit unsuccessfully.  Federal courts are reluctant to wade into the details of "garden variety" election disputes, even when it appears as though the law has actually

---

[22]   *Id.* at 468.  *Accord Marchant v. New York City Bd. of Elections*, 815 F. Supp. 2d 568 (E.D.N.Y. 2011) (Matsumoto, J.) (rejecting plaintiff voters' effort to get a candidate on the ballot, holding that (1) *Rivera-Powell* governs and the state afforded the voters sufficient due process by giving their preferred candidate pre-deprivation hearings at the Board of Elections and in state court and that (2) even if *Rivera-Powell* does not govern, voters themselves were given notice of the pre-deprivation hearing, attended the hearing, and attended the state court proceeding, which in combination also provided them sufficient process to satisfy the Constitution).

been violated.[23] Similarly, there is no basis for federal court interference when no state law has been violated and a candidate has simply failed to comply with reasonable election regulations.

## V. CONCLUSION

Because plaintiffs cannot show any likelihood of success on the merits, their request for an injunction is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   June 4, 2012
         New York, New York

---

[23]   *See Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (describing a voting machine malfunction – even one that controls the outcome of an election – as the "paradigmatic example of a garden variety election dispute" that does not violate Due Process) (quotation and citation omitted); *Powell v. Power*, 436 F.2d 84, 86 (2d Cir. 1970) (warning against federal courts "be[ing] thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law").

11

**Appearances**

**For Plaintiffs**:

Herbert Moreira-Brown, Esq.
350 Broadway, Suite 701
New York, NY 10475
(212) 625-3991

**For Defendants:**

Stephen Edward Kitzinger
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-0849